# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 7055 | **DATE** | 9/2/2003 |
| **CASE TITLE** | Midwest Canvas Corporation vs. Cantar/Plyair Corp. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the defendants' motion for partial summary judgment pursuant to FRCP 56 [56-1] is granted. Judgment is to be entered on behalf of the defendants as to Count I of the Third Amended Complaint. Defendants' motion to construe the claims of the '155 patent [56-2] and plaintiff's motion to excluded defendants' invalidity from claim interpretation [44-1] are denied as moot. This case is set for status on Tuesday, 10/7/2003 at 9:00 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | 81 |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK  03 SEP -3 AM 8:58  FILED FOR DOCKETING  7-03 | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | SEP 0 3 2003 | |
| | | | date mailed notice | |
| TSA courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDWEST CANVAS CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) No. 01 C 7055 |
| v. | )<br>) |
| | ) Wayne R. Andersen |
| CANTAR/POLYAIR CORP., and<br>LESLIE'S POOLMART, INC., | ) District Judge<br>)<br>) |
| Defendants. | ) |

### MEMORANDUM, OPINION AND ORDER

This case is before the Court on the defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion for partial summary judgment is granted.

DOCKETED
SEP 0 3 2003

### BACKGROUND

Plaintiff Midwest Canvas Corporation ("Midwest Canvas") is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. Among other things, Midwest Canvas is engaged in the business of manufacturing and marketing lightweight plastic swimming pool covers which have been designed to keep debris out of swimming pools and to help heat the pool and retain the heat of the pool. Defendant Cantar/Polyair Corporation ("Cantar") is a corporation organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois. Defendant Leslie's Poolmart, Incorporated ("Leslie's") is a corporation organized under the laws of the State of Delaware with its principal place of business in Phoenix, Arizona.

Prior to November of 1996, Gary Handwerker, owner and Chief Executive Officer of Midwest Canvas, conceived of and developed a pool cover having a reflective lower layer specifically constructed and adapted to reflect heat already in the pool water back into the pool water. On October 30, 1996, Midwest Canvas' new swimming pool cover was presented to Maxim Technologies/Twin City Testing, Inc. for the purpose of determining the heat retentiveness in the pool water when the new reflective pool cover was utilized compared to Midwest Canvas' prior non-reflective pool cover. These tests established that a 14.6% improvement in pool water heat retention was achieved using the new pool cover. On November 12, 1996, Handwerker filed an application with the United States Patent and Trademark Office to have the new pool cover patented. After a lengthy prosecution of the application, patent no. 6,286,155 (the "'155 patent") was issued to Handwerker (and Midwest Canvas as assignee) for the new reflective pool cover on September 11, 2001.

From December 1997 through July 1998, Midwest Canvas became aware that Cantar and Leslie's had recently introduced to the market a reflective pool cover that was substantially identical to the reflective pool cover marketed by Midwest Canvas, and which is the subject of the '155 patent. Specifically, Midwest Canvas alleges that Cantar's "Solar Trap" pool cover was substantially identical to its pool cover. Both parties concede that Cantar's production/sale and Leslie's sale of the "Solar Trap" pool cover cannot be considered infringing the '155 patent until September 11, 2001, when the patent was actually issued to Handwerker.

On September 13, 2001, Midwest Canvas filed the instant patent infringement suit against Cantar and Leslie's alleging that the production and sale of the "Solar Trap" pool cover after September 11, 2001 was an infringement on the rights protected by the '155 patent. After a

brief period of discovery was conducted, the defendants requested that this Court hold a *Markman* hearing to resolve issues pertaining to the construction of certain claims in the '155 patent. Specifically, disputes arose between the parties as to the proper interpretation of the terms "dark color," "reflective surface," and "substantial amount." On December 2, 2002, a *Markman* hearing was held.

During the course of this hearing, certain testimony was elicited from the plaintiff that prompted the defendants to file this motion for partial summary judgment on the issues of infringement and patent validity. The nature of that testimony will be discussed in detail below. The motion for partial summary judgment is now fully briefed and ripe for decision.

## DISCUSSION

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate, in a patent case as in any other case, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). We will grant such a motion only when "no 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)).

1. **Does the accused product infringe the '155 patent?**

Patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention . . . ." 35 U.S.C. § 271(a). We analyze infringement in two steps: first, we determine the meaning and scope of the patent claims asserted to be infringed; and second, we compare the properly construed claims to the product or process accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).

   1. **Claim Construction**

The first step, claim construction, is a question of law and, as such, is made exclusively by the Court and involves ascertaining the true meaning and scope of each claim. *Id.* at 978. Claims are the metes and bounds of a patent and must be interpreted in light of the claim language and specifications, the prosecution history, the other claims in the patent, the prior art, and the interpretation that those skilled in the art would give the claim. *See Premier Networks, Inc. v. Lucent Tech., Inc.*, 2003 WL 21290835, at *1 (N.D. Ill. May 29, 2003). Courts cannot narrow or broaden the scope of a claim to give the patentee something different than what he has set forth.

Claims are read in light of the specifications. Ultimately, however, the claim measures the invention since claims are infringed, not specifications. Courts cannot read into a claim a limitation that appears only in the specifications, but not in the claims. Nevertheless, for claim interpretation purposes, the description in the specification can act as a sort of dictionary explaining the invention and defining terms used in the claims. *See Markman*, 52 F.3d at 979. Claims are also read in light of the prosecution history. The prosecution history of the patent

consists of the entire record of proceedings before the Patent and Trademark Office. This includes all express representations made by or on behalf of the applicant to the examiner to induce a patent grant. Such representations include amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness. A particular construction "may be confirmed by what the patentee said when [] making [the] application," *Id.* at 980, but the prosecution history may not be used to "enlarge, diminish, or vary" the limitations in the claims. *Id.*

In this case, there is a dispute between the parties as to certain terms contained in the '155 patent. The '155 patent includes 11 claims; claims 1 and 7 are the only independent claims. Midwest Canvas has alleged that the defendants have infringed both of these claims. Additionally, Midwest Canvas has asserted that the defendants have infringed dependent claims 2, 3, 4, 5, 6, 8, 9, 10, and 11. For purposes of claim construction in this case, the parties dispute the meaning of the following limitations of independent claims 1 and 7:

I. "an upper layer of a <u>dark color</u> and a predetermined size . . ."

II. "said lower <u>reflective layer</u> also including a reflective surface which reflects heat directed from said pool water toward said lower reflective layer to reflect a <u>substantial amount</u> of the heat radiating from the pool water back into the pool water."

For purposes of this motion, it is only necessary to provide a construction of the term "dark color" because its meaning is central to the disposition of the pending request for summary judgment.

The parties have offered dueling interpretations of the term "dark color." The defendants

argue that the term should be construed to mean "an upper layer which must be of a dark color, near to black, such that it produces a substantially greater solar heating effect and reflects only a small fraction of the incident light." (Defs. *Markman* Brief at 15.) On the other hand, the plaintiff argues that the "specification of the '155 patent particularly teaches that the 'dark color' of the upper layer acts to 'draw heat into the pool thereby acting to increase the temperature of the water contained in the pool.'" (Pltf.'s Response to Summary Judgment at 5.) In other words, from the plaintiff's perspective, the term "dark" defines a pool cover layer that is absorptive of the sun's heat rays to one of ordinary skill in the art. (*Id.*)

From the testimony provided during the *Markman* hearing, it is clear that the product embodied by the '155 patent is intended to provide a means by which ambient heat in a swimming pool is retained in that pool. This is accomplished through a swimming pool cover with a dark upper layer which absorbs the heat from the sun and a reflective lower layer which reflects the heat already present in the swimming pool back into the pool. The explicit language of the patent specification states that "the dark color of this upper layer will act to draw heat into the pool thereby acting to increase the temperature of the water contained in the pool." ('155 Patent, col. 3, lns. 7-10.) Testimony rendered during the *Markman* hearing established that any dark color could perform the function of generating a solar heating effect in the pool water. While the defendants are correct that a color nearer to black would provide the most efficient solar heating, the defendants' expert, Professor Kurt Rolle, acknowledged that colors of a lighter shade than black or brown still have the capacity to absorb solar radiation. (*Markman* transcript at 131-136.) Because of this and other testimony, we find that the defendants' proposed construction of the term "dark color" is too limiting and does not properly reflect the patentee's

6

purpose in seeking the patent. Instead, we conclude that the plaintiff's interpretation of the term "dark color" is the proper one. Therefore, we accept the plaintiff's definition of "dark" as a color that is absorptive of the sun's heat rays to one of ordinary skill in the art.

2. **Infringement**

The second step, the infringement analysis, analyzes whether a claim covers an accused device, which is a question of fact. *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995). "Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in the suit." *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). The patentee bears the burden of proving that every limitation set forth in the asserted claim is found in the accused product either literally or by the doctrine of equivalents. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196 (Fed. Cir. 1994).

Literal patent infringement, which is alleged here, is found if the accused device or product embodies every limitation of the claim, either literally or by an equivalent. *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998). "If an express claim limitation is absent from the accused product, there can be no literal infringement as a matter of law." *Wolverine World Wide*, 38 F.3d at 1199. For literal infringement, each limitation of the claim must be met by the accused device or product exactly, any deviation from the claim precludes a finding of infringement. *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994).

This case presents perhaps the least difficult infringement analysis this Court has ever been required to perform. During the course of the *Markman* hearing held on December 2, 2002,

7

Mr. Handwerker was called by plaintiff's counsel to testify about his development and understanding of the '155 patent. On cross-examination of Handwerker, defense counsel showed the witness a sheet of plastic that he represented to the Court was used in the production of the top layer of Cantar's "Solar Trap" pool cover, the product that allegedly infringes the '155 patent. In a very rare Perry Mason-esque moment, Handwerker conceded that the sheet of plastic from the accused product was not dark. The full exchange is:

> Q: With regard to the claim term "dark color," how is a competitor supposed to determine from the patent itself whether or not they infringe? Can you answer that question?
>
> A: In my belief, a dark color is a dark blue, a dark black, a dark brown. My belief clear is not an absorption color. It is not a dark color.
>
> * * *
>
> Q: So is it your testimony that in order to determine whether somebody's pool cover infringes your patent or not, you would have to see it first?
>
> A: I think you – I think anybody would know it was dark and was not dark as a layman.
>
> * * *
>
> Q: But you would have to look at the accused product before you could make that decision, right?
>
> A: No, I think anybody could make that decision. I think you could make the decision if it is dark or not.
>
> * * *
>
> The Court: Right. So – and so you think almost everybody would answer those questions – that question the same way, but they would have to look at the surface itself to answer the question?
>
> A: Okay

8

> The Court: So, counsel, you have established that a person would have to actually look at the – at the surface before determining whether or not dark applied to it.
>
> Q: Okay. Thank you, your Honor.
>
> Q: Mr. Handwerker, let me show you a sample of a plastic sheet. Can you tell me whether that is a dark color?
>
> A: In my opinion it is not.

(*Markman* Transcript 49-52.)

Immediately following this exchange, defense counsel requested that the plastic sheet Handwerker had just testified was not dark be placed into evidence as defense exhibit number two. No objection was raised by plaintiff's counsel. Later in the hearing, defense counsel again represented to the Court that "the product accused of infringement has as its top layer the sheet of plastic that we marked as Defendants' Exhibit 2 which this witness testified was not dark." (*Markman* Transcript at 72-73.)

The admission by Mr. Handwerker that the top layer of the allegedly infringing product was, in fact, not dark is very powerful. Not only is he the owner and CEO of Midwest Canvas, but he is also the individual who conceived the '155 patent. As such, we must consider him, at a minimum, to be a person of ordinary skill in the art. For him to then concede that the top layer of the accused product did not have a "dark color" makes the issue of infringement very easy. As we stated before, in order for this Court to find that a product infringes a patent, each limitation of the claim must be met by the accused device or product exactly. *See Lantech*, 32 F.3d at 547. Both parties agree that the "dark color" limitation is a key element of claim 1. Therefore, because Handwerker's admission establishes that the accused product does not infringe the "dark

9

color" limitation, we are compelled to find that the accused pool cover does not literally infringe the '155 patent. *See Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985). The defendants are entitled to summary judgment on Count I of Midwest Canvas's Third Amended Complaint.

## 2. Is the '155 patent invalid?

In their motion for summary judgment, the defendants also ask that we determine that the '155 patent is invalid as indefinite pursuant to 35 U.S.C. § 112. 35 U.S.C. § 112 ¶ 2 states that patent claims must "particularly point [ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention." The standard for determining whether a patent claim is sufficiently definite to satisfy this statutory requirement is whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). In other words, the standard is "whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing." *Id.* (internal quotation omitted). Determination of claim indefiniteness is a question of law drawn from the Court's duty as construer of patent claims. *Id.* at 1376.

The defendants have raised very persuasive arguments concerning whether certain claim terms are indefinite. Specifically, the defendants argue that the limitation "dark color" and "reflective surface" are so indefinite that they do not provide any guidance to interested parties concerning the scope of the patent. Defendants argument is bolstered by the plaintiff's apparent position that "dark" is anything darker than white and that "reflective surface" is any surface that reflects at all.

10

Plaintiff's argue that there is a statutory presumption of validity that attaches to a patent under 38 U.S.C. § 282. This presumption is bolstered by the Federal Circuit's statement that the Trademark and Patent Office is presumed to have performed its job properly when it issued a patent. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984). Patent examiners are assumed to have experience in interpreting the references and to be familiar from their work with the level of skill in the applicable art. We presume that the patent examiner and the three members of the Board of Patent Appeals and Interferences who examined the '155 patent performed their job diligently.

We see no need to perform a full invalidity analysis in this case. As was discussed in great detail above, we have already concluded that the accused products of the defendants do not infringe the '155 patent. It is unnecessary then to perform an invalidity analysis. Therefore, we will preserve the presumption of patent validity in this case and reject the defendants' request that we find the claims of the '155 patent indefinite and invalid, but we welcome any comment that the Federal Circuit may choose to make if this issue reaches that court.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 [Docket #56-1] is granted. Judgment is to be entered on behalf of the defendants as to Count I of the Third Amended Complaint. Defendants' motion to construe the claims of the '155 patent [Docket #56-2] and plaintiff's motion to exclude defendants' invalidity from claim interpretation [Docket 44-1] are denied as moot. This case is set for status on Tuesday, October 7, 2003 at 9 a.m.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 2, 2003